UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE BUFORD, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 10218 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| LABORERS' INTERNATIONAL UNION LOCAL 269 | ) | |
| and LABORERS' LOCAL UNION NO. 4, | ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Maurice Buford brings this *pro se* suit against his union, Laborers' International Union

Local 269, and its alleged successor, Laborers' Local Union No. 4, under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981, alleging that Local 269

discriminated against him on the basis of race and color by failing to adequately represent him in

connection with his termination by his former employer, I.W. & G., Inc. Doc. 7. (For the sake

of convenience, and assuming without deciding that Local 4 assumed Local 269's liabilities, the

court will refer to both Locals together as "Defendants.") With discovery concluded, Defendants

move for summary judgment, arguing that the record would not permit a reasonable juror to find

that Local 269 discriminated against Buford. Doc. 160. The motion is granted.

**Background**

**A.      Buford's Noncompliance with Local Rule 56.1(b)(3)**

Consistent with Local Rule 56.1, Defendants filed a Local Rule 56.1(a)(3) statement of

undisputed facts along with their summary judgment motion. Doc. 161. The factual assertions

in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported

by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of

short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants served on Buford a Local Rule 56.2 notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Doc. 163. If Buford wished to oppose summary judgment, Local Rule 56.1(b) required him to file:

> (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to [Defendants' Local Rule 56.1(a)(3)] statement that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b).

Buford filed a Local Rule 56.1(b)(3)(B) response but not a Local Rule 56.1(b)(2) memorandum of law or a Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 166 at pp. 1-20. Buford's Local Rule 56.1(b)(3)(B) response expressly declines to dispute ¶¶ 2, 4-5, 8, 10, 13-15, 24, 26, 30-31, and 47-48 of Defendants' Local Rule 56.1(a)(3) statement, *id*. at ¶¶ 2, 4-5, 8, 10, 13-15, 24, 26, 30-31, 47-48, so the factual assertions in those paragraphs are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("[A]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed admitted unless controverted by the statement of the opposing party."). Buford's Local Rule 56.1(b)(3)(B) response denies or otherwise objects to the remaining paragraphs of the Local Rule 56.1(a)(3) statement, but those denials and objections violate Local Rule 56.1 in several respects.

First, Buford's response violates Local Rule 56.1(b)(3)(B)'s requirement that a non-movant denying a particular paragraph in the movant's Local Rule 56.1(a)(3) statement support the denial with "specific references to the affidavits, parts of the record, and other supporting materials relied upon."  N.D. Ill. L.R. 56.1(b)(3)(B).  Paragraphs 9, 11, 18-20, 22-23, 28-29, and 33-44 of Buford's Local Rule 56.1(b)(3)(B) response do not cite any record evidence to support his denial of or objection to the facts asserted in the corresponding paragraphs of Defendants' Local Rule 56.1(a)(3) statement.  Doc. 166 at ¶¶ 9, 11, 18-20, 22-23, 28-29, 33-44.  Accordingly, those paragraphs of Defendants' Local Rule 56.1(a)(3) statement are deemed admitted.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure … to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (same); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (same); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003) (same); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (same).  In so holding, the court notes that some of Buford's denials rest on the submission that he misspoke during his deposition or does not recall the underlying facts, *id*. at ¶¶ 19, 22, 36-37, 43-44, or that the evidence supporting Defendants' assertions is fabricated or unverified, *id*. at ¶¶ 18, 28-29, but those submissions create, at most, only "metaphysical doubt" about Defendants' assertions and therefore are insufficient to create a genuine issue of fact.  *See Abrego v. Wilkie*, 907 F.3d 1004, 1011-12 (7th Cir. 2018) ("When the moving party has carried [its] burden, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'  Instead, the nonmoving party must set forth specific facts showing a genuine issue for trial.") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Almost three weeks after the deadline for his response to Defendants' summary judgment motion, Doc. 165, Buford filed a declaration purporting to provide additional evidence, Doc. 167. The tardiness of the declaration alone provides sufficient reason to disregard it. *See Raven v. Madison Area Technical Coll.*, 443 F. App'x 210, 212 (7th Cir. 2011) ("Although we liberally construe pro se filings, we do not enlarge filing deadlines for them.") (citation omitted); *Casimir v. Sunrise Fin., Inc.*, 299 F. App'x 591, 593 (7th Cir. 2008) ("[E]ven when the litigant is pro se, district courts are justified in enforcing deadlines, particularly in the context of summary judgment and Local Rule 56.1.") (collecting cases). In any event, Buford's declaration does him no good, as his Local Rule 56.1(b)(3)(B) response does not cite the declaration, and the declaration references neither his Local Rule 56.1(b)(3)(B) response nor Defendants' Local Rule 56.1(a)(3) statement. Docs. 166-167. The court need not and will not attempt to map the factual assertions in Buford's declaration onto Defendants' Local Rule 56.1(a)(3) statement or his Local Rule 56.1(b)(3)(B) response to determine whether he has adduced any genuine disputes of material fact; that is the purpose of a properly constructed and supported Local Rule 56.1(b)(3)(B) response. *See Curtis*, 807 F.3d at 219 ("The purpose of [Local] Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court."); *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005) ("We are hard-pressed to see how [the] affidavit could constitute compliance with [Local] Rule 56.1. … [The] affidavit in no way constitutes a concise response to each numbered paragraph in the [Local Rule 56.1(a)(3)]

statement.") (internal quotation marks and alteration omitted); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[T]he district court did not abuse its discretion in limiting its review to the content of the parties' Local Rule 56.1 statements, excluding from consideration [the non-movant's] attached affidavits."), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016). Accordingly, Buford cannot use his declaration to dispute what his Local Rule 56.1(b)(3)(B) response admits or to buttress his denials.

Second, ¶¶ 1, 3, 12, 17, and 27 of Buford's Local Rule 56.1(b)(3)(B) response make factual assertions that go well beyond the facts asserted in the corresponding paragraphs of Defendants' Local Rule 56.1(a)(3) statement. Doc. 166 at ¶¶ 1, 3, 12, 17, 27. For example, ¶¶ 3 and 27, which deny Defendants' assertions that I.W. & G. offered certain reasons for Buford's termination, contain lengthy rebuttals to the reasons themselves rather than addressing whether I.W. & G. in fact offered them. *Id.* at ¶¶ 3, 27. Those extraneous facts will be disregarded because a non-movant seeking to assert facts that go beyond what is fairly responsive to the movant's Local Rule 56.1(a)(3) assertions must do so not in his Local Rule 56.1(b)(3)(B) response, but rather in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Eason v. Nolan*, 416 F. App'x 569, 570 (7th Cir. 2011) ("[T]he district court did not abuse its discretion when it disregarded the additional facts that [the non-movant] included in his [Local Rule 56.1(b)(3)(B)] response."); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008) (holding that because the non-movant's Local Rule 56.1(b)(3)(B) response "contained several extremely long, argumentative paragraphs, and in those paragraphs [the non-movant] simultaneously denied the veracity of [the movant's] proposed material facts and presented additional facts of his own … , [and] the district court did not err by refusing to consider the facts he proposed"); *Ammons*, 368 F.3d at 817 (noting that Local Rule 56.1 "envisions a separate

statement of additional facts" and holding that non-responsive facts in a Local Rule 56.1(b)(3)(B) response "should have been included in a separate statement"); *Bolden v. Dart*, 2013 WL 3819638, at *2 (N.D. Ill. July 23, 2013) (same). Enforcing this rule is not an exercise in formalism; rather, "[t]he rationale … is that if the non-movant includes additional facts in only the Local Rule 56.1(b)(3)(B) response, the movant is unfairly deprived of a vehicle under Local Rule 56.1 to dispute those facts because [Local Rule 56.1] permits movants to reply only to a Local Rule 56.1(b)(3)(C) statement, not a Local Rule 56.1(b)(3)(B) response." *Hall v. Vill. of Flossmoor Police Dep't*, 2012 WL 6021659, at *8 n.8 (N.D. Ill. Dec. 4, 2012); *see also Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *13 (N.D. Ill. July 26, 2012) (same).

There are additional grounds for disregarding the extraneous factual assertions in ¶¶ 1, 3, 12, 17, and 27 of Buford's Local Rule 56.1(b)(3)(B) response. To the extent those assertions are not supported with specific record citations, they may be disregarded for the reasons stated above. The assertions may be disregarded as well to the extent they are supported by citations to several telephone recordings, Doc. 166 at ¶¶ 12, 17; *id*. at pp. 19-20 (citing additional recordings without reference to any paragraph in the Local Rule 56.1(a)(3) statement), submitted on two compact discs, Doc. 166-2. Although the discs contain eleven unclearly labeled recordings, each several minutes long, the Local Rule 56.1(b)(3)(B) response does not cite any particular file, let alone a specific portion of any such file. In that respect, the response violates Local Rule 56.1's insistence on specific citations to evidentiary material. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) ("It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to know what portion of a witness's testimony the party is invoking so that it can focus its attention on that testimony and assess whether it is admissible and actually supports the

fact or inference for which it is cited."); *Ammons*, 368 F.3d at 817-18 (affirming the district court's decision to disregard the non-movant's Local Rule 56.1(b) responses on the ground that they "cited an entire deposition transcript rather than specific page references"); *Erwin v. U.S. Dep't of State*, 2014 WL 242786, at *2 (N.D. Ill. Jan. 22, 2014) (declining to consider factual assertions by the non-movant that "cited entire documents without indicating where in those documents the relevant material appeared") (collecting cases).

Third, ¶¶ 1, 3, 6-7, 9, 16, 19, and 32 of Buford's Local Rule 56.1(b)(3)(B) response assert various legal arguments. Doc. 166 at ¶¶ 1 (arguing that Local 269's business manager aided and abetted unlawful activity and violated the duty of fair representation), 3 (contending that I.W. & G. violated Buford's rights under *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975)), 6 (seeking to hold I.W. & G. in contempt for failing to produce documents), 7 (asserting that the union steward improperly supervised Buford), 9 (arguing that Local 269's business manager violated his duty to respond to I.W. & G.'s unlawful actions), 16 (asserting that Local 269's business manager is legally responsible for the harassment that Buford allegedly experienced from another union member), 19 (challenging Defendants' objections to Buford's discovery requests), 32 (construing the union's collective bargaining agreement). Because "[i]t is inappropriate to make legal arguments in a [Local Rule 56.1(a)(3)] statement" or a Local Rule 56.1(b)(3)(B) response, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), the court will disregard the legal arguments in Buford's Local Rule 56.1(b)(3)(B) response. *See Curtis*, 807 F.3d at 219 ("[D]istrict courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("[T]he

purpose of [Local Rule 56.1(a)(3)] statements [and Local Rule 56.1(b)(3)(B) responses] is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their [Local Rule 56.1(a)(3)] statements and [Local Rule 56.1(b)(3)(B)] responses.").

The court will not excuse any of Buford's many violations of Local Rule 56.1. The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (same); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (same). Buford's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Zoretic*, 832 F.3d at 641 ("While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules … ."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even

though Wilson is a pro se litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Accordingly, except where Buford has complied with Local Rule 56.1(b)(3)(B) in disputing facts asserted in Defendants' Local Rule 56.1(a)(3) statement, Doc. 166 at ¶¶ 21, 25, 45-46, Defendants' assertions are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("[A]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed admitted unless controverted by the statement of the opposing party."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (similar); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) (similar). That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (citations and internal quotation marks omitted). Accordingly, the court will recite the facts as favorably to Buford as the record and Local Rule 56.1 permit, and then will determine whether Defendants are entitled to judgment on those facts. *See Swyear v. Fare Foods Corp.*, __ F.3d __, 2018 WL 6787325, at *3 (7th Cir. Dec. 26, 2018). At this juncture, the court must assume the truth of

those facts, but does not vouch for them.  *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

### B.    Material Facts

Buford was a member of Local 269, a labor union that represented construction workers. Doc. 161 at ¶¶ 1-2.  Between June 2012 and November 2014, Timothy Moore served as the business manager responsible for overseeing Local 269's affairs, including the relationship between its members and employers with whom Local 269 had a collective bargaining agreement ("CBA").  *Id*. at ¶ 1; Doc. 161-1 at p. 1, ¶ 2.  I.W. & G., which was bound by a CBA with Local 269, hired Buford around July 1, 2014 as a laborer on the Chicago Vocational School ("CVS") construction project.  Doc. 161 at ¶¶ 3, 25.  The CBA did not require I.W. & G. to have "just cause" when terminating a Local 269 member, *id*. at ¶ 25; Doc. 161-1 at p. 2, ¶¶ 10-11 (referencing the CBA, which is reproduced at Doc. 161-1 at 6-39), though it did prohibit discrimination due to race and color, Doc. 161-1 at 12 (reproducing the CBA's "Equal Opportunity" clause).

I.W. & G. terminated Buford on July 17, 2014—two or three weeks after he was hired— on the asserted ground that he had become a nuisance due to his frequent altercations with other laborers.  Doc. 161 at ¶ 3.  Moore investigated the termination by interviewing Buford's coworkers, obtaining disciplinary records, and speaking with Tom Vacala, a member of I.W. & G.'s management.  *Id*. at ¶¶ 7, 26-29.  The disciplinary records, which included a summary report prepared by I.W. & G. safety manager Mike DiRienzo, indicated that Buford had received a verbal reprimand on July 3 for "threatening behavior" toward a coworker, Steve Enis; a written reprimand on July 14, Doc. 161-1 at 40, for having a heated argument with another coworker, Juan Stanford; an employee reprimand form on July 17 stating that, despite prior verbal

warnings, Buford had failed to follow instructions, violated safety rules, and engaged in "[u]nsafe work practice[s]" and "[t]hreatening behavior," Doc. 161-1 at 180; and various reports from I.W. & G. personnel that Buford had threatened gun violence against workers at the CVS site. Doc. 161 at ¶¶ 7, 27; Doc. 161-1 at p. 3, ¶ 14. These reports led I.W. & G. to call the police when they heard that Buford was returning to the CVS site on July 18. Doc. 161 at ¶¶ 13, 27.

Moore also received the employee termination form that Vacala approved on July 17, which noted that Buford was terminated for "[j]ust [c]ause," including "[e]xcessive warnings," "constant insubordination," "[v]iolation of safety regulations," "[j]eopardizing safety of the entire job," "[i]nappropriate behavior," and "[d]isrupting work." *Id*. at ¶ 27; Doc. 161-1 at 181. Moore followed up with Vacala, who stated that Buford was terminated due to the substantial number of incidents that had occurred during his brief tenure at I.W. & G. Doc. 161 at ¶ 28; Doc. 161-1 at p. 3, ¶ 13. In addition, Moore spoke with Ben Gomez and Stanford, coworkers of Buford, who provided similar descriptions regarding Buford's behavior at the CVS site. Doc. 161 at ¶¶ 6, 29; Doc. 161-1 at 44-46 (reproducing the written statements that Gomez and Stanford provided to Moore).

Buford contends that everyone at I.W. & G. who provided information to Moore was discriminating against him as part of a conspiracy to support his termination. Doc. 161 at ¶¶ 30-31. To support his claim that he experienced race and color discrimination, Buford cites these incidents: he was forced to complete menial tasks not commensurate with his work experience; Gomez, the Local 269 steward, taunted, threatened, and harassed Buford while ordering him around; Jesus Huizar, a coworker, called Buford a "Dumb ass fucking nigger" shortly before his termination, an incident that Buford raised with Vacala the day he was fired; and I.W. & G. needlessly called the police on him the day following his termination. Doc. 161 at ¶¶ 6, 15.

Buford also notes that Vacala threatened to fire him on July 14 without allowing him to have a union representative present. *Id*. at ¶ 15.

As to Moore's investigation, Buford asserts that Moore did not adequately investigate the false grounds that I.W. & G. offered to support his termination and inaccurately claimed that I.W. & G. could hire and fire whomever it wanted. Doc. 161 at ¶ 11. Additionally, Buford submits that Moore coerced Enis into falsifying an incident report against him, though he does not know exactly what Moore said to Enis beyond "you could say this, you could say that." *Id*. at ¶¶ 15, 20. Buford further submits that Moore was present at the CVS site on July 18 and laughed when I.W. & G. called the police against him, though he admits that he was not present that day. *Id*. at ¶¶ 11, 13. Buford submits that "everything just went bad" at I.W. & G. after Moore visited the CVS site from July 9 through July 12 and expressed surprise that Buford was working there. *Id*. at ¶ 15.

Based on his investigation, consultations with other union representatives, and conclusion that the CBA did not require I.W. & G. to have "just cause" to terminate Buford, Moore informed Buford on July 31, 2014 that the termination was not "grievable" under the CBA. Doc. 161 at ¶¶ 32-33. Moore also told Buford that I.W. & G. considered him to be a nuisance and that Moore could not make I.W. & G. take him back. *Id*. at ¶ 34. Following this discussion, on August 14, 2014, Buford submitted a written grievance to Moore. *Id*. at ¶¶ 22, 24; Doc. 161-1 at 175-178. Around September 12, 2014, Moore reiterated to Buford that Local 269 would not pursue the grievance. Doc. 161 at ¶ 35. Buford asserts that Moore failed to investigate the allegations in his grievance and notes that Moore did not attend a factfinding conference in March 2015. Doc. 161 at ¶ 11.

Although several Local 269 members of different races were terminated by various employers while Moore was the Local's business manager, the union never pursued a grievance to challenge any termination by an employer bound by the "no just cause required" CBA that Local 269 had with I.W. & G. *Id*. at ¶ 25; Doc. 161-1 at p. 5, ¶ 21. And although Buford claims that Defendants inadequately represented him because he is black, Doc. 161 at ¶ 9; Doc. 161-1 at 56, 80, he cannot identify any Local 269 or Local 4 member of another race who was terminated under similar circumstances but who received better representation, Doc. 161 at ¶ 19.

Buford submitted a charge to the U.S. Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights alleging that Defendants engaged in race discrimination. Doc. 7 at 8-9. On July 28, 2016, the EEOC issued a right-to-sue letter. *Id*. at 7.

Before wrapping up the facts, the court must address the hearsay objections asserted by Buford, Doc. 166 at ¶¶ 3, 27, 29, 35, to certain of the facts set forth above. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The hearsay objections concern matters that Moore read or heard during his investigation as well as Moore's statement to Buford that his grievance was not grievable. Doc. 166 at ¶¶ 3 (arguing that DiRienzo's statements to Moore about altercations involving Buford at I.W. & G. are "Exaggerated Hearsay"), 27 (challenging as "fabricated hearsay" Enis's report about the altercation with Buford, and reiterating his hearsay objection to DiRienzo's statements), 29 (arguing that Gomez's and Stanford's statements to Moore were "nothing more [than] fabricated hearsay"), 35 (challenging as "mere hearsay" Moore's statement to Buford that his termination was not grievable).

Buford's hearsay objections are overruled. First, the statements that Moore heard or read are not hearsay because they are used not for the truth of the matters asserted, but rather to show

their effect on Moore during his investigation into Buford's termination. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 796 (7th Cir. 2015) (holding that a negative reference from the plaintiff's former employer was not hearsay because it had been "considered not for its truth, but to show its effect on the state of mind" of the defendant hospital in rejecting the plaintiff's application); *Schindler v. Seiler*, 474 F.3d 1008, 1011 (7th Cir. 2007) ("[A] statement offered to show its effect on the person who heard the statement is not hearsay."). Moreover, to the extent the reports of Buford's conduct that I.W. & G. received and then shared with Moore include hearsay within hearsay, *see* Fed. R. Evid. 805, they likewise are admissible because on each level because they are used for their effect on the listener (the I.W. & G. supervisor and then Moore) rather than for their truth. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) ("[W]hen a document contains multiple levels of hearsay, … each layer must be admissible. … To the extent the officers reported statements made by others—the robbery victims—those statements were not hearsay because they were not offered to prove that they were true."). Finally, Moore's statement to Buford about the grievability of his termination is not hearsay because it is offered not for its truth, but only to show that the statement was made to Buford. *See Anderson v. United States*, 417 U.S. 211, 220 & n.8 (1974) ("[E]vidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement.").

## Discussion

The complaint alleges that Local 269 discriminated against Buford in violation of Title VII and § 1981 by failing, due to his race and color, to represent him following his termination from I.W. & G. Doc. 7 at ¶¶ 9 (alleging that Defendants discriminated against Buford based on his race and color), 13 ("[T]he union business agent for [Local 269] didn't give me 'duty of fair

represent[at]ion![']").  Mindful that "pro se filings should be read liberally," *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[P]ro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed … ."), the court can and will read the complaint also to allege violations of the duty of fair representation under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  *See Stewart v. Theatrical Stage Emps. Union Local No. 2*, 211 F. Supp. 3d 1094, 1098 (N.D. Ill. 2016) (noting that "Plaintiff's claims, which he filed pro se, may have been more appropriately labeled as violations of the duty of fair representation under … 29 U.S.C. § 185").

At the outset, the court notes that Buford, by failing to file a Local Rule 56.1(b)(2) memorandum of law, has forfeited any legal arguments he might have had in opposition to summary judgment.  *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Nextel specifically requested summary judgment on the quantum meruit claim.  Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment.  By failing to present its argument to the district court, Keck Garrett abandoned its claim."); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).  Nonetheless, as noted, the court still must and will determine

whether Defendants have demonstrated through their own summary judgment materials that they are "entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884.

## I.      Title VII and Section 1981 Claims

Under Title VII, it is "an unlawful employment practice for a labor organization … to discriminate against[] any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1).  If a union "would have processed [a] grievance or represented [a member]" differently if he were not a member of a protected class, "then the union violated Title VII." *Green v. AFT/IFT Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014); *see also EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 661 (7th Cir. 2003) ("If a black worker asks the union to grieve a complaint [and] the union refuses, though if the worker were white the union would grieve his complaint[, t]his is a clear violation … of [42 U.S.C. § 2000e-2(c)(1)].").  Likewise, "[a] § 1981 claim may be brought against a labor organization … when the collective bargaining agreement contains an express clause binding both the employer and the union not to discriminate on racial grounds … and when the labor organization as the collective bargaining agent intentionally avoids asserting discrimination-based claims." *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 312 (7th Cir. 1996) (internal quotation marks omitted).

The Seventh Circuit "generally use[s] the same standards to review discrimination … claims under § 1981 and Title VII." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017); *see also Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016) ("We analyze Title VII and § 1981 claims under the same framework."); *Pipefitters Ass'n Local Union 597*, 334 F.3d at 658 (same with respect to Title VII and § 1981 claims against a union); *Stahly v. Amalgamated Transit Union, Local 696*, 3 F. Supp. 3d 720, 729 (N.D. Ind. 2014) ("The standards for proving a Title VII violation [against a union] are essentially the same as a Section 1981 violation.").  For

convenience's sake, therefore, the court will principally draw on Title VII case law when evaluating Buford's Title VII and § 1981 claims.  *See Montgomery v. DePaul Univ.*, 2012 WL 3903784, at *8 (N.D. Ill. Sept. 7, 2012) (citing cases).

Defendants contend that there is insufficient evidence for a reasonable factfinder to conclude that they failed to represent Buford because of his race or color.  Doc. 162 at 4-14. Under the framework set forth by the Seventh Circuit in *Ortiz*, a Title VII claim survives summary judgment if the plaintiff presents evidence that, "considered as a whole," would allow a reasonable jury to find that his protected characteristic caused the adverse action in question. 834 F.3d at 765.  To meet that burden, the plaintiff may rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Ortiz*, 834 F.3d at 765-66.  In the employment discrimination context, the *McDonnell Douglas* framework requires the plaintiff to adduce evidence showing that he belonged to a protected class, met his employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better—together, his *prima facie* case—provided that the defendant fails to articulate a reasonable alternative explanation for the adverse action or the plaintiff shows that the proffered alternative explanation is a pretext for discriminatory animus.  *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).  That framework is just one way that the record can enable a reasonable jury to find discrimination.  *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that *McDonnell Douglas* provides "a common, but not exclusive, method of establishing a triable issue of intentional discrimination") (internal quotation marks omitted).  A court therefore must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the

broader question whether, considering the evidence as a whole, "a reasonable factfinder [could] conclude that … [a] proscribed factor caused … the adverse employment action." *Ortiz*, 834 F.3d at 765; *see also Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1004-05 (7th Cir. 2018) ("Although the oft-cited burden shifting framework from *McDonnell Douglas* … provides a means of organizing, presenting, and assessing circumstantial evidence, we must consider the evidence as a whole in deciding whether to grant summary judgment.") (internal quotation marks and citations omitted).

Accordingly, the court will "begin [its] assessment of the evidence by employing [the *McDonnell Douglas*] construct and addressing first whether [Buford] has established" a genuine dispute under that framework. *David*, 846 F.3d at 224. If Buford fails to do so, the court will then "assess cumulatively all the evidence … to determine whether it permits a reasonable factfinder to determine" that Defendants failed to pursue Buford's grievance due to his race or color. *Ibid.*; *see also Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628-29, 631 (7th Cir. 2018) (similar); *Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 957 (N.D. Ill. 2016) (similar).

As noted, to establish his *prima facie* case under *McDonnell Douglas*, Buford must show, among other things, that "he is a member of a protected class" and that "one or more similarly situated individuals outside his protected class received better treatment" from Defendants than he. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (internal quotation marks omitted); *see also Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 859 (9th Cir. 2016) ("[A] union member can make out a prima facie claim of discrimination by introducing evidence that the member was singled out and treated less favorably than others similarly situated on account of race … .") (internal quotation marks omitted). Although Buford (by his own description) is black and thus a member of a protected class, the record reflects no

instance in which Defendants pursued a grievance to challenge any termination by an employer bound by the type of "no just cause required" CBA that governed I.W. & G union employees, and Buford cannot identify any Local 269 or Local 4 member of another race who was terminated under similar circumstances but who received better union representation. Doc. 161 at ¶¶ 19, 25; Doc. 161-1 at 80. Without such evidence, Buford cannot establish his *prima facie* case under *McDonnell Douglas*. *See Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018) ("[The plaintiff] has presented no adequate comparators, so no reasonable factfinder could conclude that similarly situated employees were treated more favorably."); *Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 959-60 (7th Cir. 2009) ("Bilal … presented nothing in her summary judgment brief or Rule 56.1 statement below[] to show why these employees were similarly situated or how they were treated more favorably. Thus, the district court correctly granted summary judgment to defendants on the discrimination claim."); *Stewart*, 211 F. Supp. 3d at 1104 ("Although Stewart, an African American, is a member of a protected class, the record is devoid of evidence that any similarly situated Union members outside of that class were treated more favorably than him."). It follows that Buford cannot forestall summary judgment under the *McDonnell Douglas* framework. *See Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 451 (7th Cir. 2014) ("Without evidence of a comparably insubordinate co-worker, [the plaintiff] failed to show a prima facie case of discrimination. … [B]ecause [the plaintiff] has not satisfied his prima facie case, an argument about pretext does not even arise.").

Buford's claim fares no better when examined through the lens of the broader question of whether the evidence, considered as a whole, would allow a reasonable juror to find that discrimination caused Defendants to decline to grieve his termination. *See Ortiz*, 834 F.3d at 765. There is no evidence in the summary judgment record about how Defendants pursued other

complaints about allegedly unlawful terminations, *cf. Green*, 740 F.3d at 1105 (in vacating summary judgment for the union, noting that the plaintiff "contends that the union has represented comparable white employees in grievance proceedings"), so Buford must show that Defendants—through Moore—exhibited discriminatory animus toward him specifically. *See Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 900 (7th Cir. 2016) ("Simply being a member of a protected class, without something more to link that status to the action in question, is not enough to raise a reasonable inference of discriminatory animus.").

Buford's conclusory belief that Moore, along with I.W. & G. laborers and supervisors, was part of a broad conspiracy bent on discriminating against him, Doc. 161 at ¶¶ 30-31, is insufficient to forestall summary judgment. *See Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017) ("To survive a motion for summary judgment, [the plaintiff] needs to show evidence of an agreement among the conspirators to violate his rights. … [The plaintiff] argues that the repeated denials of his grievances are sufficient evidence of conspiracy, but such a conclusory statement cannot defeat a motion for summary judgment."); *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) ("[A] conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy.") (internal quotation marks omitted).  Likewise, that Moore vaguely told Enis "you could say this, you could say that" about Buford, Doc. 161 at ¶ 20, that Buford suffered additional harassment after Moore visited the CVS site, *id*. at ¶ 15, and that Moore did not stop I.W. & G. from calling the police on Buford after he was fired, *id*. at ¶ 9, provides no basis for a reasonable factfinder to infer the existence of a conspiratorial agreement against him. *See Abrego*, 907 F.3d at 1014 (holding that the plaintiff cannot survive summary judgment simply because "he *believes* he was treated differently … because of his race"); *Owens*, 878 F.3d

at 565 (affirming summary judgment where the plaintiff "did not adduce evidence that officials … agreed expressly or tacitly to interfere with his pursuit of grievances"); *Simpson*, 780 F.3d at 798 ("[The plaintiff] points to no evidence suggesting that [the official] was motivated by discriminatory animus because of his race, and we are not required to draw inferences that are supported by only speculation or conjecture.") (internal quotation marks and alterations omitted).

As for Buford's being subjected to a coworker's racial slur, Doc. 161 at ¶¶ 15-16, there is no evidence that Moore agreed with or condoned that conduct or that his investigation selectively skirted or discounted those incidents, *id.* at ¶¶ 26-29, 32 (showing that Moore reviewed records, conducted interviews, and considered the absence of a "just cause" requirement before ultimately deciding not to pursue Buford's grievance). It follows that Defendants are not legally responsible for those incidents. *See Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 653 (7th Cir. 2006) (holding that unions are not "vicariously liable" for worksite harassment); *Pipefitters Ass'n Local Union 597*, 334 F.3d at 661 (recognizing that unions do not have "an affirmative duty to prevent racial harassment or other forms of unlawful discrimination in the workplace").

In so holding, the court recognizes that the CBA barred I.W. & G. from terminating Buford due to his race or color. Doc. 161-1 at 12. But a "single derogatory comment" like the racial slur directed towards Buford, however reprehensible, is generally insufficient to establish unlawful discrimination by an employer, especially where, as here, the comment was made by a "*co-worker* (rather than [a] supervisor)" with no role in the decision to terminate. *Zayas v. Rockford Memorial Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014); *see also Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) ("Discriminatory remarks are actionable only if they injure the plaintiff; there must be a real link between the bigotry and an adverse

employment action.") (internal quotation marks omitted).  And though Buford complained about the slur to Vacala on the same day he was fired, the close temporal proximity between that complaint and his termination, without more, is insufficient to overcome the "reasonable, non-suspicious explanations" that Vacala offered to justify Buford's termination, Doc. 161 at ¶ 28; Doc. 161-1 at 180-181.  *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) ("[S]uspicious timing alone is rarely enough to survive summary judgment [in the Title VII context,] particularly when there are reasonable, non-suspicious explanations for the timing of [the] termination.") (second alteration in original) (internal quotation marks omitted).

Those considerations, taken together with what Moore learned during his investigation about Buford's frequent altercations with other laborers and threats of workplace violence, Doc. 161 at ¶¶ 27-29, amply justify Defendants' decision not to pursue Buford's grievance and defeat any submission that his race or color affected the decision.  *See David*, 846 F.3d at 229 ("Our role … is not to inquire into the wisdom of an employment decision, but simply to determine if the employer is dissembling to cover up a discriminatory purpose."); *Cole*, 838 F.3d at 899 ("There is no evidence that Nicklas, the decision-maker in the demotion, had anything to do with the [racist] incident.  There simply is no … evidence that racial animus motivated [the] demotion."); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004) ("[W]e do not sit as a super-personnel department.  [The defendant's] investigation was sufficient under the circumstances[, so w]e affirm the grant of summary judgment on this claim.") (internal quotation marks and citation omitted).  Because no reasonable factfinder could conclude that the decision not to pursue Buford's grievance was discriminatory, Defendants are entitled to summary judgment on his Title VII and § 1981 claims.

## II. Duty of Fair Representation Claims

As noted, the complaint could also be read to claim that Defendants breached their duty of fair representation by failing to pursue Buford's grievance that I.W. & G. terminated him due to his race or color in violation of the CBA. Doc. 7 at ¶ 13; Doc. 161-1 at 12. A duty of fair representation claim has a six-month statute of limitations that begins to run once the "the employee knows or should have known that 'no further action would be taken on his grievance.'" *Lewis v. Dominick's Finer Foods, LLC*, 640 F. App'x 529, 533 (7th Cir. 2016) (quoting *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 751-52 (7th Cir. 2014)). On both July 31, 2014 and September 12, 2014, Moore informed Buford that the union would not pursue a grievance based on his termination. Doc. 161 at ¶¶ 33, 35. Because Buford did not file this suit until October 31, 2016, more than two years later, the statute of limitations bars his claim. *See Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916 (7th Cir. 1999) (holding that "continued union inactivity after an initial failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation" sufficient to extend the six-month statute of limitations) (internal quotation marks omitted). And Buford's filing a charge with the EEOC, Doc. 7 at 7-9, does not toll the six-month statute of limitations. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 551 (7th Cir. 1987) ("[T]he hybrid section 301/fair representation claim … is independent of a claim under Title VII, and thus the time for filing a section 301/fair representation claim is not tolled by pursuing a Title VII claim with the EEOC."). Accordingly, Defendants are entitled to judgment on Buford's duty of fair representation claim.

**Conclusion**

Defendants' summary judgment motion is granted. Judgment will be entered in favor of Defendants and against Buford.

January 14, 2019

_____
United States District Judge